UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| DALLAS INDEPENDENT SCHOOL DISTRICT, | ) | |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:15-CV-1961-G |
| | ) | |
| MICHELLE WOODY, as next friend of K.W., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Michelle Woody's amended motion for
attorneys' fees (docket entry 87). The motion was referred to Magistrate Judge
Renée Harris Toliver, who on September 17, 2018, issued an order granting the
motion in part (docket entry 100). The plaintiff, Dallas Independent School District
("DISD"), filed timely objections to Magistrate Judge Toliver's order. This court has
reviewed *de novo* those portions of Magistrate Judge Toliver's order to which
objections were made, and has reviewed the remaining portions for plain error. For
the reasons stated below, the defendant's Motion for Attorneys' Fees is **GRANTED**
to the extent stated below.

# I. <u>BACKGROUND</u>[1]

Michelle Woody ("Woody") filed suit against DISD on behalf of her daughter ("K.W."), arguing that DISD violated the Individuals with Disabilities Education Act ("IDEA") by failing to offer K.W. a free appropriate public education ("FAPE") during her senior year of high school. In short, Woody sought reimbursement for the cost of K.W.'s private school tuition and, eventually, her attorneys' fees.[2]

Some background is necessary to put the fee request in context. In April 2012, educators in Los Angeles, where Woody and K.W. were then residing, evaluated K.W. due to her learning disabilities and educational history. As a result of the evaluation, the Los Angeles Unified School District ("LAUSD") referred K.W. to an individual education program ("IEP") team to determine her special education options. The IEP team concluded that K.W. was eligible for services under the IDEA. Shortly thereafter, during summer break, K.W. suffered a psychotic breakdown and was subsequently diagnosed with schizophrenia in addition to her learning disabilities. As a result, her doctors recommended a specialized learning

---

[1]    Unless otherwise noted, the facts and procedural history are drawn from the opinion of the United States Court of Appeals for the Fifth Circuit, which affirmed in part and reversed and remanded in part this court's determination of the amount of damages to which Woody was entitled. See *Dallas Independent School District v. Woody*, 865 F.3d 303, 306-308 (5th Cir. 2017) (docket entry 75).

[2]    Woody's counsel's billing records indicate that they have worked on this case since September 2013. *See* Appendix in Support of Woody's Motion for Attorney's Fees at 11-146 (docket entry 89).

environment with significant support and close monitoring, finding that K.W. was "far too fragile to be placed on a general education campus." Because LAUSD offered only general education services, Woody moved K.W. back to Dallas and enrolled her in the private Winston School. Eventually, Woody notified DISD that she wanted to receive FAPE benefits for K.W. in the form of tuition reimbursement for the 2013-2014 school year.

Throughout K.W.'s senior year, the parties engaged in various stages of the FAPE process, which culminated in a determination that K.W. was IDEA eligible (a reversal of DISD's earlier decision) and that the IEP that DISD proposed in May 2014 could be implemented at a DISD high school from April 2014 to April 2015. K.W. was to graduate in May 2014, however. Woody disagreed with the IEP and, following a due process hearing, a special education hearing officer ("SEHO") concluded that DISD "had a legal obligation to make a timely offer of FAPE available to [K.W.] for the 2013-14 school year." Finding that DISD failed to do so, the hearing officer concluded that Woody was entitled to reimbursement in the amount of $25,426.93, which was the cost of sending K.W. to the Winston School for the entire 2013-14 school year.

DISD then appealed to this court, Complaint at 1 (docket entry 1), and this court conducted a bench trial. In a 67-page decision, this court agreed that DISD had impeded K.W.'s right to a FAPE for the 2013-14 school year, but halved the

reimbursement award to $11,942.50, finding that because Woody was partially responsible for the delay in requesting a FAPE for K.W., DISD was only liable for one half of K.W.'s Winston School tuition. See *Dallas Independent School District v. Michelle Woody*, 178 F. Supp. 3d 443, 475 (N.D. Tex. 2016) (Fish, Senior J.) (docket entry 55).

DISD again appealed, and the Court of Appeals for the Fifth Circuit upheld the determination that DISD had failed to timely offer K.W. a FAPE, but further reduced her award to allow reimbursement only from April 24, 2014, to the end of the school year, because that is when DISD should have offered the FAPE. On remand, this court awarded Woody $3,575.60 for the covered tuition and post-judgment interest. Memorandum Opinion and Order at 2-3 (docket entry 92). Woody then moved for attorneys' fees. Amended Motion for Attorney's Fees at 1-3 (docket entry 87). This court referred Woody's motion to Magistrate Judge Toliver for determination. Order Referring Amended Motion for Attorney's Fees (docket entry 98).

Upon receiving the referral, Magistrate Judge Toliver issued an order, rather than a findings of fact and recommendation, granting in part Woody's motion. Order at 1 (docket entry 100). In her order, Magistrate Judge Toliver reached conclusions on eight different issues. First, Magistrate Judge Toliver determined that the expert declaration of Craig Simon, a seasoned litigator hired by Woody to opine

- 4 -

as to the reasonableness of her attorneys' fee rates, could be considered by the court when determining the reasonableness of Woody's fee rates. *Id*. at 5-6. Second, upon considering the evidence and her own expertise in assessing the reasonableness of attorney fee rates, Magistrate Judge Toliver determined that Woody's rates of $300.00 an hour rate for lead counsel (Atwood), $250.00 an hour rate for co-counsel (Gameros), and $125.00 an hour for paralegal work (Watson), were reasonable. *Id*. at 7-8. Third, Magistrate Judge Toliver concluded that Woody was a prevailing party who could seek her attorneys' fees under the IDEA, since the award Woody received on remand from the Fifth Circuit changed the legal relationship between the parties and fostered the purposes of the IDEA. *Id*. at 8-11. Fourth, Magistrate Judge Toliver determined that the number of hours billed by Woody's attorneys (605.60 for her lead counsel, 39.30 for co-counsel, and 43 hours for paralegal work) was reasonable. *Id*. at 12. Fifth, due to Woody's relative lack of success in obtaining the full amount of relief she originally sought, Magistrate Judge Toliver concluded that a 25 percent across-the-board reduction to Woody's fee award was justified. *Id*. at 12-13. Sixth, Magistrate Judge Toliver determined that an additional 5 percent across-the-board reduction to Woody's fee award was warranted because Woody's counsel exercised imperfect billing judgment. *Id*. at 14-16. Seventh, Magistrate Judge Toliver determined that the paralegal fees billed by Watson were fully compensable to Woody. *Id*. at 16-17. Eighth, Magistrate Judge Toliver determined that because

evidence relating to DISD's previous settlement offer to Woody could not be found in the record, no fee reduction based on the proposed settlement was justified. *Id*. at 17-18.

After addressing these eight issues, Magistrate Judge Toliver concluded her order by granting Woody's motion for attorneys' fees in part. *Id*. at 19. Specifically, Magistrate Judge Toliver determined that Woody was entitled to recover from DISD in the amount of $142,432.50. *Id*. Although not expressly stated in her order, to calculate this award figure, Magistrate Judge Toliver applied Fifth Circuit precedent regarding the method for calculating attorneys' fees.

First, Magistrate Judge Toliver determined the lodestar amount by multiplying the total number of hours Woody's attorneys worked by their respective fee rates. See *Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999) ("To decide an appropriate attorney's fee award, the district court [is] first required to calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."). Since Woody had two attorneys, however, Magistrate Judge Toliver had to add the products of two separate calculations. For Atwood, this meant the magistrate judge multiplied the 645.45 (605.60 + 39.90) hours worked by his rate of $300.00 an hour, for a product of $193,650.00. *See* Defendant's Brief in Support of Amended Motion for Attorneys' Fees at 5 (docket entry 88) (stating that Atwood worked 605.60 hours, billed at $300.00 an hour,

before January 1, 2018); Defendant's Supplemental Appendix to Amended Motion

for Attorneys' Fees at 13-15 (docket entry 97) (stating that Atwood worked 39.90

hours, billed at $300 an hour, after January 1, 2018).  For Gameros, this meant the

magistrate judge multiplied the 39.30 hours worked by her rate of $250.00 an hour,

for a product of $9,825.00.  *See* Defendant's Brief in Support of Amended Motion for

Attorneys' Fees at 5 (stating that Gameros worked 39.3 hours, billed at $250 an

hour).  Adding these two products together produced the total lodestar amount of

$203,475.00.

Second, Magistrate Judge Toliver adjusted the total lodestar based "on the

circumstances of the case and after addressing the *Johnson* factors."  *Rutherford*, 197

F.3d at 192.  It is during this step that Magistrate Judge Toliver applied the two

across-the-board fee reductions that she previously determined were warranted.

Specifically, she reduced the loadstar amount of $203,475.00 by 30 (25 + 5)

percent, resulting in a final fee award of $142,432.50.  It is important to note,

however, that even though Magistrate Judge Toliver concluded that Woody's

paralegal fees of $5,075.60 were fully compensable, the magistrate judge excluded

these fees from the total fee award to which she applied the 30 percent fee reduction.

DISD now objects to the findings and legal conclusions contained within

Magistrate Judge Toliver's order.  *See* Plaintiff's Objections to Magistrate Judge's

Order Regarding Amended Motion for Attorneys' Fees and Brief in Support

("Response and Objections") (docket entry 101). In its briefing, DISD does not object to all eight of the magistrate judge's conclusions. *Id*. Rather, DISD objects only to Magistrate Judge Toliver's conclusions that: (1) the expert testimony of Craig Simon could be considered when determining the reasonableness of Woody's attorneys' fee rates; (2) the fee rates of Woody's attorneys were reasonable; (3) the paralegal fees charged by Watson were not subject to any of the across-the-board fee reductions; and (4) a 25 percent across-the-board reduction to Woody's fee award was warranted because of Woody's lack of success. Response and Objections at 16-32.

It is important to note that DISD does not object to Magistrate Judge Toliver's conclusions that: (1) Woody was a prevailing party under the IDEA; (2) the number of hours billed by Woody's attorneys was reasonable; (3) a 5 percent across-the-board reduction to Woody's fee award was justified because Woody's counsel exercised imperfect billing judgment; and (4) DISD's proposed settlement did not warrant a further reduction in Woody's fee award. *See* Response and Objection at 1 ("In summary, Dallas ISD objects to the [o]rder to the extent it did not set a reasonable lodestar rate and did not give adequate consideration to several of the *Johnson* factors and appropriately reduce Woody's claim for attorneys' fees.").

Woody has since filed a response to DISD's objections. Defendant's Response to Plaintiff's Objections to Magistrate Judge's Order Regarding Amended Motion for

Attorneys' Fees ("Defendant's Response") (docket entry 103). In this response, Woody asserts that the conclusions reached by Magistrate Judge Toliver, including the percentage reductions to Woody's fee award, were all correct. *Id*. Particularly, Woody argues that her relative lack of success was properly taken account of by Magistrate Judge Toliver. *Id*. at 2-4. Woody also maintains that the cases cited by DISD do not require this court to override Magistrate Judge Toliver's analysis. *Id*. at 4-7. Finally, Woody asserts that DISD provides no evidence establishing that the hourly rates of Woody's lead counsel were unreasonable. *Id*. at 7-8.

## II. <u>ANALYSIS</u>

### A. <u>Standard of Review</u>

"Under 28 U.S.C. § 636(b)(1)(B), a magistrate judge's recommendation regarding attorney's fees is subject to de novo review by the district court." *Richardson Independent School District v. Michael Z.*, 561 F. Supp. 2d 610, 623 (N.D. Tex. 2008) (Lynn, J.), *vacated on other grounds*, 580 F.3d 286 (5th Cir. 2009). This court recognizes that Magistrate Judge Toliver did not issue a findings of fact and recommendation, but instead issued an order granting Woody's motion for attorneys' fees. *See* Order (docket entry 100). Regardless, both this court's prior precedent and the Federal Rules of Civil Procedure require this court to review *de novo* the portions of the magistrate judge's order to which a party has raised objections, and to review the remaining portions for plain error. See *Millennium Restaurants Group, Inc. v. City of*

*Dallas,* No: 3-01-CV-0857-G, 2002 WL 1042117 at *1 n. 1 (N.D. Tex. May 21, 2002) (Fish, J.) (determining that a post-trial motion for attorney's fees is a case-dispositive matter); Federal Rule of Civil Procedure 72(b)(3) (requiring that a party's objections to a magistrate judge's disposition of a dispositive motion be resolved through a district court's *de novo* review of the parts of the magistrate judge's decision to which objections were made).

## B.  Findings To Which No Objections Were Made

Neither party objected to Magistrate Judge Toliver's findings that:  (1) Woody was a prevailing party under the IDEA; (2) the number of hours billed by Woody's attorneys was reasonable; (3) a 5 percent across-the-board reduction to Woody's fee award was justified because Woody's counsel exercised imperfect billing judgment; and (4) DISD's proposed settlement did not warrant a further reduction in Woody's fee award.  This court has reviewed Magistrate Judge Toliver's findings on these issues for plain error.  Having found none, this court accepts Magistrate Judge Toliver's findings and conclusions as to these issues.

## C.  Craig Simon's Declaration

DISD's first objection is that Magistrate Judge Toliver erred in concluding that the expert declaration of Craig Simon could be relied upon by the court when determining an award of attorneys' fees.  Response and Objection at 22.  The crux of DISD's argument is that because Simon lacks relevant experience in special education

litigation, he cannot properly offer an opinion as to whether the rates of Woody's attorneys are reasonable. *Id*. This court disagrees with DISD.

"Generally, the reasonable hourly rate for a particular community [of attorneys] is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir.), *cert. denied*, 537 U.S. 883 (2002). The relevant community refers to the "judicial district in which the litigation occurred," *Ramirez v. Lewis Energy Group, L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016), which here is the Northern District of Texas. Even further, "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.'" *Tollett*, 285 F. 3d at 368 (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998)).

Craig's declaration establishes that he has been a practicing attorney in Dallas since 1992. Defendant's Appendix to Amended Motion for Attorneys' Fees at 4 (docket entry 89). Craig is thus a member of the relevant community practicing in the relevant market. This court can find no reason to exclude the declaration of a well-seasoned attorney practicing in the relevant community and relevant market, nor does DISD provide one.

DISD cites no precedent establishing that an expert must have experience in particularized field of litigation for his affidavit or declaration to be used as evidence by a court when determining the reasonableness of a fee rate. Rather, DISD simply

argues that allowing Simon's testimony would ignore the requirement that Woody has to prove that her attorneys' fee rates were reasonable and in line with similar services or similar cases. Response and Objection at 22. This argument is unconvincing.

While it is true that Simon does not possess a background in special education litigation, that does not mean his declaration fails to establish that the fee rates of Woody's attorneys were reasonable and in line with similar services or similar cases. In his declaration, Simon explains that to reach his conclusions regarding the reasonableness of the rates of Woody's attorneys, he reviewed "certain case law related to the award of attorneys' fees under the IDEA." Defendant's Appendix to Amended Motion for Attorneys' Fees at 4. He also "reviewed case law and pleadings from other cases that reveal rates as high as $400 per hour for lawyers in Texas knowledgeable in special education matters." *Id*. at 5. Since Simon analyzed case law and pleadings related to fee rates in special education matters, this court concludes that his declaration can, in fact, establish that the rates of Woody's attorneys were reasonable and in line with similar services or similar cases. Accordingly, this court concludes that Simon's declaration may be used to determine whether Woody's attorneys' fee rates are reasonable, and that Magistrate Judge Toliver did not err in concluding the same.

D.  Reasonable Fee Rates

DISD's second objection is that Magistrate Judge Toliver erred in concluding that the fee rates of Woody's attorneys were reasonable.  Response and Objection at 21-25.  It is DISD's contention that the rates of Woody's attorneys, Atwood and Gameros, are unreasonable because they lack experience litigating special education matters.  *Id*.  DISD maintains that Woody's attorneys are inexperienced because, in response to discovery, they admitted that:  (1) neither Atwood nor Gameros has represented a parent in a due process hearing involving claims under the IDEA; (2) neither Atwood nor Gameros has represented a parent or student as an attorney in any lawsuit filed in court involving claims under the IDEA; and (3) Gameros has had no prior experience representing a parent or student in matters involving the IDEA.  *Id*. at 22.  DISD also cites a number of opinions, arguing that the analysis of reasonable fee rates contained within these opinions warrants a conclusion that the rates of Woody's attorneys are unreasonable.  *Id*. at 24-25.

Ultimately, DISD asks this courts to reduce the fee rates of Woody's attorneys to reflect their lack of experience, and to match the rates of similarly experienced school law lawyers found in the State Bar of Texas 2015 Hourly Fact Sheet.[3]  *Id*. at 25.  After a careful review of both parties' filings, as well as the cases cited by both

---

[3]    This court takes judicial notice of the State Bar of Texas 2015 Hourly Fact sheet. See *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 n. 4 (N.D. Tex. July 1, 2015) (Fitzwater, J.) ("This court may properly consider the Fact Sheet as a basis for determining a reasonable hourly rate.").

parties, this court concludes that Magistrate Judge Toliver did not err in finding that the fee rates of Woody's attorneys were reasonable. Thus, this court will not grant DISD's request.

"The reasonable hourly rate is determined based on the prevailing market rate in the relevant legal community." *Richardson Independent School District*, 561 F. Supp. 2d at 626 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). "The applicant bears the burden of establishing by satisfactory evidence the prevailing market rate." *Id*. Generally the reasonable hourly rate is established through affidavits submitted by other attorneys practicing in the community. *Tollett*, 285 F.3d at 368.

Here, Woody submitted multiple filings to demonstrate the reasonableness of her attorneys' fee rates. As for affidavits, Woody filed declarations of Craig Simon and Robert Atwood, her attorney. *See* Defendant's Appendix to Amended Motion for Attorneys' Fees (docket entry 89); Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees (docket entry 97). Additionally, Woody filed her discovery responses to DISD's requests for admission. Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 8-9. Woody also filed the invoices of DISD's counsel, to demonstrate the similarity between the rates of her attorneys and the attorneys of DISD. Defendant's Appendix to Amended Motion for Attorneys' Fees. Although DISD argues that the discovery responses filed in this

case demonstrate the inexperience and unreasonable rates of Woody's attorneys, Woody's filings tell another story.

In Simon's declaration, Simon maintains that he is not only "very familiar" with the backgrounds of Gameros and Atwood, but also that it is his opinion—formed after "review[ing] case law and pleadings from other cases that reveal rates as high as $400 per hour for lawyers in Texas knowledgeable in special education matters"—that the hourly rates charged by Woody's attorneys are reasonable. Defendant's Appendix to Amended Motion for Attorneys' Fees at 3-6. Simon also specifically mentions in his declaration that Atwood "has extensive knowledge concerning legal issues related to special education." *Id*. at 4-5.

Atwood, in his declaration, explains that he has been practicing law since 1988, and that he has a wealth of litigation experience. Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 3. Atwood further maintains that although he was only able to start taking on clients in special education law cases after his retirement from Jones Day in 2012, he has at least 16 years of special education law experience due to attending special education related meetings for his disabled son. *Id*. at 4.

Additionally, Woody's responses to discovery show that Atwood contends he has represented a parent or student as an attorney in an Admission Review and Dismissal meeting convened under the IDEA and that Atwood also contends he has

prior experience as an attorney representing parents and/or students in matters dealing with the IDEA. Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 8-9. Finally, the invoices of DISD's counsel reveal that the rates of DISD's attorneys ($295.00 and $275.00) are quite similar to the rates of Woody's attorneys ($300.00 and $250.00). Defendant's Appendix to Amended Motion for Attorneys' Fees at 1, 157.

When read together, Woody's filings lead this court to the conclusion that Woody's attorneys have a great deal of litigation experience and that the rates they charge are reasonable. DISD believes otherwise, however, and makes two arguments against the import of Woody's filings that this court must address.

First, DISD argues that these declarations overstate Atwood's special education law experience, since it is only Atwood's experience litigating IDEA matters in court or at a due process hearing that is relevant to calculating the reasonableness of attorneys' fees, rather than his experience as a father of a disabled child. Response and Objection at 23, n. 8 (citing *S.F. v. McKinney Independent School District*, No. 4:10-CV-323-RAS, 2013 WL 775529, at *3 (E.D. Tex. Feb. 28, 2013) ("prosecution of such IDEA claims at the administrative level is a specialized legal field, is fact intensive, and requires an attorney with experience in the field.")). Specifically, DISD asserts that because this was Atwood's first time going through the due process

hearing procedure, he "lacks experience in the field." Response and Objection at 23, n. 8.

Second, DISD argues that it is improper to consider the similarity between the rates charged by Woody's attorneys and those charged by DISD's attorneys. Response and Objection at 24 n. 10. Particularly, DISD asserts that such a comparison is clearly an error because the Fifth Circuit has determined that "[n]o prior Fifth Circuit authority requires this comparison, nor does common experience, because the tasks and roles of counsel on opposite sides of a case vary fundamentally." *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 384 (5th Cir.), *cert. denied*, 565 U.S. 1036 (2011).

Neither of DISD's arguments convince this court. First, DISD's argument that Atwood lacks relevant experience in the field is unpersuasive. Just because this case was the first case in which Atwood was required to go through the due process hearing procedure to obtain relief for his client does not mean that Atwood lacks relevant legal experience in the field. In fact, as Atwood asserts in his declaration, this "was not [his] first administrative hearing and not [his] first special education matter." Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 4. In response to DISD's requests for admission, Atwood contends that prior to this lawsuit he had experience as an attorney representing parents and/or students in matters dealing with the IDEA. *Id*. at 9.

Second, DISD's argument that Fifth Circuit precedent precludes comparing the fee rates of opposing counsel is misplaced.  In *McClain*, the Fifth Circuit rejected the plaintiff's contention that Supreme Court precedent supported awarding the plaintiff's a fee award that "matche[d] the rates allegedly paid by [the defendant] to its Houston attorneys." *McClain*, 629 F.3d at 381, 384.  Specifically, the Fifth Circuit determined that the hourly rates of both parties' attorneys need not match, and that "[n]o prior Fifth Circuit authority require[d] this comparison." *Id*. at 384.  The Fifth Circuit, however, did not forbid courts from comparing the fee rates of both parties' attorneys to determine whether the rate requested by the moving party is *reasonable*.  In fact, a number of courts throughout the Fifth Circuit have found that such a comparison is helpful in determining whether a fee rate is reasonable.  See e.g., *Innovention Toys, LLC v. MGA Entertainment, Inc.*, No: 07-6510, 2014 WL 1276413, at *3 (E. D. La. Feb. 24, 2014) ("When determining a reasonable fee to be awarded to a prevailing party, courts have found it useful to consider the time that was expended and the fees that were charged by the prevailing party's opponent."); *S.F.*, 2013 WL 775529 at *3 ("The Court finds that the hourly rates charged in this case were reflective of the prevailing rates in the community, and, as noted by [the] [p]laintiff, appears to be in line with the rates charged by [the] [d]efendant's counsel in this matter.").

Additionally, this court finds unconvincing DISD's argument that precedent requires this court to conclude that Woody's fee rates are unreasonable. Although DISD cites multiple cases in support of its claim that, due to inexperience, the rates of Woody's attorneys are unreasonable, most of the cases cited are either unlike the facts of this suit or would tend to support Magistrate Judge Toliver's conclusion.

First, the facts of *I.W.* are unlike the facts presented by this suit. Specifically, in *I.W.* the court reduced the fee rate of the prevailing party's lead counsel after concluding that: (1) her more experienced co-counsel charged less; (2) her rate was higher than the 2015 median rate of lawyers practicing school law in a similar geographic area; and (3) that her rate was higher than the 2015 median rate of lawyers who had a similar amount of total experience. *I. W. v. Hardin-Jefferson Independent School District*, No: 1:15-CV-332, 2017 WL 5644386, at *18-*19. (E.D. Tex. Jan. 4, 2017). Here, Woody's more experienced counsel, Atwood, did not charge less than his co-counsel, Gameros. Defendant's Appendix in Support of Amended Motion for Attorneys' Fees at 4. And, although Atwood's rate of $300.00 an hour is above the median rate of lawyers practicing school law in the Dallas area in 2015 ($225.00 an hour), his rate is the same as the 2015 median rate for lawyers with his amount of experience (21-25 years). *See* State Bar of Texas, Department of Research and Analysis, 2015 Hourly Fact Sheet at 8, 11-12 (Aug. 2016) ("Fact Sheet"), *contained in* DISD's Appendix in Support of Its Objections to Magistrate

Judge's Order Regarding Amended Motion for Attorney's Fees (docket entry 102). At the very least, the fact that Mr. Atwood's rate is similar to the rates of lawyers with similar years of experience indicates that Mr. Atwood's fee rate is reasonable.

Second, the court's decision in *Melanie B.* would tend to support Magistrate Judge Toliver's conclusion. In *Melanie B.* the court determined that the attorneys' fees of the prevailing party were reasonable by comparing the rates of the prevailing party's attorneys with the State Bar of Texas' Hourly Rate Report for 2015. *Melanie B. v. Georgetown Independent School District*, No: 1:17-CV-438-LY, 2018 WL 2027745, at *13 (W.D. Tex. May 1, 2018). There, the court noted that the median rate for school law attorneys in the same geographic area was below the rate charged by the prevailing party's attorneys. *Id*. Nevertheless, the court concluded that the attorneys' rates were reasonable because they were similar to the median rate of attorneys in the same geographic area who had practiced for a similar number of years. *Id*. Here, Atwood's $300.00 an hour rate is the same as the 2015 median rate for lawyers with his same amount of experience in the Dallas region. *See* Fact Sheet at 12. *Melanie B.* would therefore support magistrate judge Toliver's conclusion.

Third, the facts of *Charles O.* are inapposite to the facts presented by this dispute. There, the court reduced the fee rates of two of the prevailing party's three attorneys. *Charles O. v. School District of Philadelphia*, No. 13-0512, 2014 WL 4794993 at *4-*6 (E. D. Penn. Sept. 26, 2014). In doing so the court examined

these attorneys' limited experience practicing special education law, as well as their limited experience in federal litigation. *Id*. at *4-*5. Unlike the attorneys mentioned in *Charles O.*, Atwood has over twenty years of federal litigation experience, as well as relevant special education law experience. Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 3-5.

Fourth, the facts of *Eugene School District* are similarly inapposite to the facts presented by this dispute. There, the court reduced the fee rate of the prevailing party's attorney due to the attorney's overall inexperience as a lawyer. *T.B. v. Eugene School District*, No: 6:15-CV-0111, 2016 WL 3951385, at *2 (D. Or. July 21, 2016). While the court made a note that this case was the attorney's first IDEA due process hearing, the court's analysis focused mostly on the fact that the attorney had less than three years of experience as a lawyer, which caused her to take more time than a more experienced lawyer would take to accomplish similar tasks. *Id*. Here, Atwood has more than twenty years of experience as a lawyer. Defendant's Supplemental Appendix to Amended Motion for Attorneys' Fees at 3-4. This fact alone distinguishes this case from that of *Eugene School District*.

Fifth, the facts of both *E.C.* and *School District of Philadelphia* are distinguishable from the facts of this dispute. There, the courts in both cases reduced the fee rate of one of the prevailing party's attorney after determining that the attorney had only focused on special education law for about two years. *E.C. v.*

*School District of Philadelphia*, 91 F. Supp. 3d 598, 606 (E. D. Penn. 2015), *aff'd*, 644

Fed. Appx. 154 (3d Cir. 2016); *I. W. v. School District of Philadelphia*, No: 14-3141,

2016 WL 147148, at *11 (E. D. Penn. Jan. 13, 2016).  Here, the facts demonstrate

that although Atwood was only able to shift his practice's focus to special education

law in 2012, he has at least 16 years of experience dealing with special education law

due to his son's disability.  Defendant's Supplemental Appendix to Amended Motion

for Attorneys' Fees at 4.

    Because none of the cases cited by DISD convince this court of DISD's

position, and because Woody's filings demonstrate that she has satisfied her burden

of producing satisfactory evidence as to the reasonableness of her attorneys' fee rates,

this court reaches the same determination as Magistrate Judge Toliver.  This court

therefore concludes that the fee rates of Woody's attorneys are reasonable.

Consequently, this court determines that total lodestar amount, which will be

adjusted during the second step of this court's calculation of Woody's attorneys' fees,

is $208,550.60.[4]

---

[4]    The $208,550.60 figure is the result of adding together the reasonable
fees of Woody's two attorneys, Atwood and Gameros, along with her paralegal fees.
Atwood worked a total of 645.5 hours at the rate of $300.00 an hour, resulting in a
fee amount of $193,650.00.  Gameros worked a total of 39.3 hours at the rate of
$250.00 an hour, resulting a fee amount of $9,825.00.  As will be discussed in the
next section, Woody's paralegal fees totaled $5,075.60.  Adding together
$193,650.00, $9,825.00, and $5,075.60 results in the sum of $208,550.60.

### E.   Paralegal Fees

DISD's third objection to Magistrate Judge Toliver's order concerns Woody's paralegal fees.  DISD does not object to Magistrate Judge Toliver's award of paralegal fees.  Response and Objection at 15 n. 7 ("Dallas ISD does not object to the award of paralegal fees.").  Rather, DISD objects to the magistrate judge's failure to subject Woody's paralegal fees to the across-the-board fee reductions that Magistrate Judge Toliver determined were warranted.  *Id*. (DISD "requests that such fees be included in the reduction across-the-board.").  DISD thus asks this court to include Woody's paralegal fees in the total award amount that is subject to across-the-board fee reductions.

Because DISD does not object to the magistrate judge's findings that Woody's paralegal fees are fully compensable, this court need only review these findings for plain error.  *See* Federal Rules of Civil Procedure Rule 72.  Upon reviewing the magistrate judge's order, this court finds no plan error in her analysis of whether Woody's paralegal fees are compensable.  This court therefore reaches the same conclusion as Judge Toliver, that Woody's paralegal fees, totaling $5,075.60, are compensable.  Order at 16-17.

Nevertheless, this court does not agree with Magistrate Judge Toliver's failure to subject Woody's paralegal fee award to any of the across-the-board fee reductions.  If party requests compensation for paralegal fees as part of her motion for attorney's

fees and a court determines that the paralegal fees are compensable, the paralegal fees become part of the lodestar. See, *e.g.*, *Hernandez v. Aleman Construction, Inc.*, No: 3:10-CV-2229-BN, 2013 WL 5873289, at *6 (Horan, Magistrate J.) (N.D. Tex. Nov. 1, 2013) (noting that the lodestar figure for attorneys' fees includes paralegal fees). Additionally, precedent makes clear that the *entire* lodestar is adjusted upwards or downwards depending on the circumstances of the case and the court's application of the *Johnson* factors. *Rutherford*, 197 F.3d at 192.

Here, because Woody's paralegal fees are compensable, they should have been included in the total lodestar and subjected to the same across-the-board fee reductions which applied to Woody's attorneys' fees. Thus, this court agrees with DISD and will include Woody's paralegal fees, totaling $5,075.60, in the lodestar amount that is subjected to further across-the-board reductions.

## F.  Lodestar Reduction

DISD's fourth objection is that Magistrate Judge Toliver erred in concluding that Woody's lack of success warranted only a 25 percent across-the-board reduction to Woody's fee award. *See* Response and Objection at 10-21.[5]  DISD raises two arguments in support of its objection. *Id.*

---

[5]    This court recognizes that in its briefing, DISD styles its arguments as to the impropriety of Magistrate Judge Toliver's 25 percent fee reduction as two separate objections. Response and Objection at 10-21. Nevertheless, since both objections concern the second step of the lodestar method for calculating an award of attorneys' fees, this court will address both objections together.

First, DISD argues that a 25 percent "reduction of fees does not give due consideration to the most critical factor in the analysis – Woody's degree of success on all of her issues and the relief requested as compared to the relief ultimately obtained." *Id*. at 14.  In particular, DISD maintains that because Woody neither received the full relief she originally sought, nor prevailed on every issue, a 25 percent across-the-board reduction to Woody's fee award is unreasonable.  *Id*. at 12-18.  DISD thus asks this court to impose a reduction of at least 75 percent on Woody's fee award.  *Id*. at 18.

Second, DISD argues that when reducing Woody's fee award, Magistrate Judge Toliver failed to properly consider similar case law.  *Id*. at 18-21.  It is DISD's view that in lieu of analyzing similar cases, Magistrate Judge Toliver based her 25 percent reduction for Woody's lack of success on factually dissimilar opinions brought under laws other than the IDEA.  *Id*. at 18-19.  DISD contends that a proper consideration of similar cases would require a fee reduction larger than 25 percent. *Id*. at 20-21.

After a review of both parties' arguments, as well as the filings in this case, this court finds that Magistrate Judge Toliver erred in reducing Woody's fee award by only 30 percent.[6]  Accordingly, this court agrees with DISD's fourth objection, and

_____

[6]      The 30 percent reduction here includes the 25 percent reduction for Woody's lack of success, as well as the 5 percent reduction for Woody's imperfect billing judgment.  As mentioned earlier in this opinion, this court accepts Magistrate

(continued...)

this court will subject Woody's entire fee award to an across-the-board reduction of 50 percent.

To determine an appropriate award of attorneys' fees, a court must engage in a two-step process. First, the court must "calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford*, 197 F.3d at 192.[7] Then, the court must "consider whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and after addressing the *Johnson* factors." *Id.* (citing *Wegner v. Standard Insurance Co.*, 129 F.3d 814, 822 (5th Cir. 1997)). The twelve *Johnson* factors the court must consider when deciding to adjust the lodestar include: "(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

---

[6](...continued)
Judge Toliver's finding that a 5 percent reduction in Woody's fee award is warranted due to imperfect billing judgment.

[7]    This court already addressed the first step of the lodestar calculation earlier in this opinion, concluding that the lodestar amount, before any adjustments, totaled $208,550.60. *See supra* section II(d).

'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Jason D.W. by Douglas W. v. Houston Independent School District*, 158 F.3d 205, 209 (5th Cir. 1998) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

"Many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983)). Even so, "some *Johnson* factors deserve more weight than others." *Id.* In particular, the Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. This factor is particularly important where a litigant is deemed a "prevailing party" but does not succeed on all of her claims. *Id.* at 434.

When adjusting a prevailing party's fee award based on the degree of her success, a court need not proportionately adjust the award based on the ratio of the relief that party requested as compared to the relief ultimately obtained. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). "Nevertheless, proportionality remains 'an appropriate consideration in the typical case.'" *Combs v. City of Huntington, Texas*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Hernandez v. Hill Country Telephone Cooperative Inc.*, 849 F.2d 139, 144 (5th Cir.

1988)).  Additionally, even if a party is deemed to be "prevailing," this does not

mean she is entitled to recover the full amount spent on legal representation.  *Jason*

*D.W. by Douglas W.*, 158 F.3d at 209.

Here, both parties agree that Woody is a prevailing party within the meaning

of the IDEA.  *See* Response and Objection at 11, n. 5 ("Dallas ISD does not object to

the Magistrate Judge's finding that Woody is a prevailing party. . . .").  Even so, a

thorough review of the fillings in this case reveals that Woody was only partially

successful.

For one, at the due process hearing Woody received a fraction of the relief she

requested, since she only prevailed on two out of the four issues she raised.  *Dallas*

*Independent School District*, 178 F. Supp. 3d at 460.[8]  Specifically, at this hearing the

---

[8]     At the due process hearing, Woody raised the following four issues:  (1)
whether Woody was entitled to reimbursement for tuition and costs, including
transportation costs, associated with K.W.'s attendance at the Winston School for
the 2013-2014 school year; (2) whether Woody was entitled to reimbursement for
costs associated with counseling received during the 2013-2014 school year; (3)
whether Woody was entitled to compensatory services for violations of IDEA
sustained during the 2013-2014 school year in the form of reimbursement for
counseling and transition services for K.W. until the age of twenty-one; and (4)
whether DISD violated the procedural protections of IDEA by failing to review
K.W.'s Independent Educational Evaluation upon its completion.  *See* Texas
Education Agency Administrative Record Volume I at 157 (docket entry 74-3).  In
addition, Woody sought $68,251.93 in relief related to these four issues, consisting
of: (1) $23,885.00 in tuition for the Winston School for the 2013-2014 school year;
(2) $1541.93 in transportation costs associated with K.W.'s attendance at the
Winston School for the 2013-2014 year; (3) $825.00 in psychiatric medication
management costs; (4) $42,000 in compensatory counseling services for K.W. until
K.W. reaches the age of 21.  *Id.* at 15-16, 36-39.

special education hearing officer concluded that DISD denied K.W. a FAPE and awarded Woody $25,426.93 as ""reimbursement for the out of pocket cost to [K.W.'s] family for the tuition of private school, plus transportation, for the [entire] 2013-2014 school year." *Dallas Independent School District*, 178 F. Supp. 3d at 460. While the hearing officer's decision and award reflected Woody's success on her first and fourth issues, the omission of costs for psychiatric medical management and compensatory counseling services from the award demonstrated Woody's failure on her second and third issues. *Id*.

In addition, Woody's success at the due process hearing was whittled away as this suit progressed through this court and the Fifth Circuit. Although both this court and the Fifth Circuit ultimately determined that DISD had denied K.W. a FAPE, both courts reduced the amount of Woody's relief. First, this court determined that because Woody was partially responsible for DISD's delay in offering K.W. a FAPE, DISD would only be liable for retroactive reimbursement for one-half of K.W.'s tuition. *Dallas Independent School District*, 178 F.3d at 475. Additionally, this court concluded that Woody was not entitled to reimbursement for K.W.'s transportation to and from school. *Id*. Accordingly, this court reduced Woody's relief from $25,426.93 to $11,942.50. *Id*. at 476.

Second, upon appellate review of this court's judgment, the Fifth Circuit determined that DISD's obligation to provide K.W. a FAPE only arose on April 24,

2014, meaning that DISD only needed to reimburse Woody for tuition from April 24 until the end of the school year. *Dallas Independent School District*, 865 F.3d at 322. On remand, based on the Fifth Circuit's decision, this court further reduced Woody's relief from $11,942.50 to $3,575.60. Memorandum Opinion and Order at 2-3 (docket entry 92).

Ultimately, because Woody only prevailed on two out of the four claims she originally raised, and because Woody's final award of $3,575.60 is about eighteen times less than the $68,251.93 in relief she originally requested, this court concludes that Woody's partial success warrants an across-the-board fee reduction larger than 25 percent. A consideration of similar cases leads this court to the same result. See *Jason D.W. by Douglas W.*, 158 F.3d at 208-212 (affirming district court's reduction of prevailing party's fees by half to account for time spent on unsuccessful claim, and then half again to account for prevailing party's limited success, where prevailing party only succeeded on three out of nineteen claims and was not entirely successful on the claim that the school district denied him a FAPE); *McNeil v. Options Public Charter School*, No: 12-0529, 2013 WL 791199, at *7 (D.D.C. Mar. 1, 2013) (reducing prevailing party's fee award by approximately 83 percent, where that party prevailed on only one of the six issues raised in the due process complaint); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 46-47 (D.D.C. 2012) (reducing prevailing party's fee award by 50 percent, where prevailing party requested tuition

reimbursement for the 2009-2010 school year as well as prospective tuition payment for the forthcoming school year, but only received tuition reimbursement for the latter half of the 2009-2010 school year).

Even so, this court declines DISD's request to reduce Woody's fee award by 75 percent. While Woody's partial success, as well as similar case law, urge this court to reduce Woody's fee award by more than 25 percent, this court finds that the tenth *Johnson* factor (the undesirability of the case) persuades this court against a 75 percent fee reduction. In particular, this court finds that this case was undesirable, as evidenced by the uncontested statements in Simon's declaration that "there are very few skilled attorneys available in the Dallas/Fort Worth area who will undertake the representation of a student (or student's parent) in a dispute with a school district . . . . [and even fewer] attorneys who would take on the representation of a client who lacks the financial wherewithal to pay for the representation in a timely manner (as Mr. Atwood did)." Defendant's Appendix to Amended Motion for Attorneys' Fees at 5.

Accordingly, this court concludes that the application of the *Johnson* factors to the facts of this dispute justifies an across-the-board fee reduction of 50 percent. Therefore, because neither party objects to, and this court agrees with, Magistrate Judge Toliver's across-the-board free reduction of 5 percent for imperfect billing judgment, Woody's fee award will altogether be subject to a 55 percent reduction.

Therefore, Woody's total lodestar of $208,550.60 will be reduced by 55 percent ($114,702.83), resulting in a fee award of $93,847.77.

### III.  CONCLUSION

For the reasons stated above, this court **ACCEPTS** the findings and conclusions of the United States Magistrate Judge to which no objections were made, and the findings and conclusions of the United States Magistrate Judge as to the use of Simon's expert declaration and the reasonableness of Woody's fee rates.  For the same reasons, this court **REJECTS** the findings and conclusions of the United States Magistrate Judge concerning a 25 percent reduction of Woody's fee award based on her partial success and instead imposes a 55 percent reduction (50 percent for degree of success and 5 percent for imperfect billing judgment).  Therefore, Woody's Amended Motion for Attorneys' Fees is **GRANTED** to the extent that Woody is entitled to recover from DISD attorneys' fees in the amount of $93,847.88.

**SO ORDERED.**

November 30, 2018.

A. JOE FISH
**A. JOE FISH**
**Senior United States District Judge**